Good morning, my name is Vicki Morel Gutierrez and I'm here on behalf of Ubaldo Gutierrez. This is another statute of limitations case under EDPA. In this particular case, we believe we have grounds both under statutory grounds and under equitable tolling grounds to toll the statute of limitations. Under statutory tolling, Mr. Gutierrez timely filed a petition for rid of habeas corpus in August of 2004, and with that he also filed a petition for quorum novus. The superior court denied the rid of habeas corpus and did not mention the quorum novus. Under Ramirez, in Ramirez's case, the timely filing of a quorum novus petition stays, tolls the statutory time limit. That petition has never been ruled on. That's one possible basis for statutory tolling. Well, now, are we talking about the 134 days? No. Okay. I'm talking about the, before, the time that triggered the 134 days was a decision by the superior court denying the habeas corpus petition, and that happened in September of 2004. What I'm talking about is the fact that there was a petition for quorum novus that was never specifically mentioned. Okay, but haven't you waived that particular issue in this appeal? It was mentioned, it was brought up as the fact of the two, there are two. I'm talking about the quorum novus alone. Isn't that been waived? I don't believe it has been, but that is a possibility for, there are two quorum novuses. There's, the client argued in his habeas cases and in the trial court, he argued more strenuously about the second quorum novus petition that he filed, that that was a timely filed petition. But I believe that we had mentioned, we had brought up the fact that there was the, in the timeline that the first one was not addressed at all, and therefore it brought up the Ramirez case that it is a statutory grounds for tolling. I also believe that in this particular case, unlike a lot of the tolling cases out there, there are good equitable grounds. The United States Supreme Court recently in Holland versus Florida, which was addressed in the district court case, says that there's a rebuttable presumption in favor of equitable tolling when we're not dealing with a jurisdictional statute of limitations. So that's one of the basis for equitable tolling. Also in this case. Run that by me again. I just missed the substance of that as to how it applies here. Well, just that there's a, the court favors equitable tolling. Well, you mean the concept may apply, but you still have to have grounds. Exactly. What's the basis of equity here that should apply? One of the basis, there are two, and the second one goes to what Judge Fletcher was talking about in terms of whether a state court denies on the merits or not. That's one of the things the court did not deny as untimely. It did deny it on the merits. The second habeas corpus petition, which was filed in February. How does that speak to equitable tolling at all? It just is one of the factors, would indicate equitable tolling might be appropriate in this case. The primary basis for the equitable tolling is the fact that Mr. Gutierrez did file, timely file, or thought he timely filed, both a habeas corpus and a quorum nobis petition in November, which would have been timely, it would have been within 50 days, in the superior court. He addressed it, captioned it for the court of appeal, but he did file it in the wrong court. Now, that does not statutorily toll anything, because it was not properly filed. But it is among the factors that might indicate that there is an equitable basis here. Mr. Gutierrez is not like some of the other people in these cases that you see for equitable tolling. He's not coming out there saying, oh, the law library was locked down and my lawyer never got back to me, and all of these various excuses. He clearly was diligent in his attempt to file his habeas corpus petitions in this case. Does California have a procedure where the clerk of one court or the court itself may refer a filing to the place it's supposed to have been filed? I don't think there's any procedure per se. I certainly have experienced something similar myself in terms of having put the wrong address or something and been told, sent back and told to change the address. So I don't think that there's anything per se there. I did, in fact, look to see if there was anything that would be saving, a basis for saving because it was filed in the wrong court. I couldn't find anything in this circumstance that I did, in fact, find affirmatively in terms of a notice of appeal, which is jurisdictional, that that doesn't work. But I could not find anything specific. In California, where would a notice of appeal be filed? It's filed in the superior court. So if it's accidentally filed in the court of appeal, it doesn't work. And there's no saving for that. So in this case, he sent the petitions to the place that you would properly have sent a notice of appeal. Right. But because they're independent petitions in the court of appeal, they should have been sent there. Right. And the irony of this particular case is the first packet of habeas corpus, quorum novus petitions he filed in the superior court, the first page that was stamped was the writ of habeas corpus. And the quorum novus petition was not separately stamped. The second time he filed, the quorum novus was stamped. And the writ of habeas corpus wasn't stamped. So that was another reason that the court should have, the superior court should have addressed the habeas corpus, I mean, the quorum novus, because it was properly, it was filed at that time. Now, the habeas that was sent to the wrong address, the one that should have been sent to the court of appeal, was it apparent from the habeas petition itself, not the address, but from the petition itself, that it was intended to go to the court of appeal? I believe the, I believe so. And certainly the quorum novus said so in that it said, having been denied at the superior court previously. So someone reading those papers would know. If they actually read through them all the way, they would know that it was definitely intended. And it was captioned to the court of appeal. The certificate of mailing said it was being sent to the court of appeal. So somebody looking at those papers would know that this was intended to go to the court of appeal. Right. And this question is basically Judge Clifton's question, but with a different word. Whether there's some formal procedure in the sense of a rule that requires that something be done. I'm wondering what the practice is in the California courts when it's apparent from the papers that they've been sent to the wrong address. Well, as I mentioned earlier, in my own personal experience, I don't think I've ever sent them to the wrong address, but they certainly have notified me for any irregularity. And in this case, there was nothing. Nothing. It was just stamped and put in the file. Mr. Wildman went and actually looked at the file. So they just sat there. Right. It was just. I don't believe it even appears on the docket, but I didn't have my computer with me today. I was thinking that and did not check to see if it actually appeared on the docket. That's having been lodged. And just a quick question, a quick statement on the other question that Judge Fletcher asked. I just wrote a case last week, and I didn't find it applicable to my case. It was called Lackey, I believe, just came out of this court. And I believe the trial court, the California trial court, did overturn, say a petition was untimely. But I don't know what the timeframe was. I don't say the California courts never say untimely. That was the first one I'd ever run across, and I believe the Fletcher's remembering from reading it. It's very rare, and in my experience, at least, I cannot recall one being held untimely based on a gap of 90 days. And I don't remember what the timeframe was. Thank you. Good morning. Dave Wildman, Deputy Attorney General for Respondent. Counsel has made two arguments regarding the petitions. One regarding the August 2004 petition for coronavirus, and counsel has argued that hasn't been ruled on. It appears, however, that the practice in California is that if it's not a proper coronavirus petition, it's treated as a habeas petition, which is what this coronavirus petition appeared to be. It contained claims to the record, and so that when it appears the ruling came down September 2004, it was a ruling concerning both petitions, which were together in the trial court, Superior Court file. As to the November 29th petition, obviously it doesn't statutory toll because it was never properly filed in either Superior Court or in the Court of Appeal. I have the document in front of me, and it has on the top, filed in block letters, Los Angeles Superior Court, even though it's headed in the California Court of Appeals. It should be Appeal, of course. Second Appellate District, Division I. And it's also signed by a deputy clerk dated November 29, 2004. What do we make of this? Well, I think that's correct what you're reading there, first of all. What I looked at it, and I tried to figure out what this was doing in the file, because it doesn't similarly appear in the California Court of Appeal docket. They never got to the California Court of Appeal. No. As far as I can tell, it never reached. So this probably ended up in the docket number that's on here. There is a Superior Court docket number as well as the California Court of Appeals docket, Appeal docket number. Maybe that's what happened. Or do we know? Well, the docket number from the Court of Appeal there would be the number from the direct appeal case, I'm certain. That's B1599433, probably. Right. Okay. But there's also a Superior Court docket number. And that's probably what the deputy clerk relied on, huh? Well, that docket number would be the trial court number. Right. It's the same Superior Court number as the trial. Right. But I'm trying to figure out, where did this end up? It ended up in the Superior Court file. Under that docket, under the Superior Court docket? Yes. And what it appears, and I'm trying to read the tea leaves, obviously, because there's no explanation. We all are. What must have happened is the court looked at it, said it's a Court of Appeal case. This is probably a courtesy copy for the lower court, just as the trial court gets in the direct appeal cases. Every time there's a response to be filed, the Superior Court gets a copy. It goes in the file. The same with the Court of Appeal opinion. It would go in that file. So they do get courtesy copies sometimes of items that are filed in the higher courts. And that must have been what the clerk looked at and saw this as. I'm certain, you know, I'm guessing that if the judge looked through the file and saw that, he would see that it was just a courtesy copy and not something that was directed for the trial court to rule upon. When you say the judge saw that, is there any evidence that a judge rather than a clerk saw it? None. Okay. Which brings us back to the problem we have here. What dignity do we give in terms of dealing with the timing of this issue, the 134-day timing of this issue? What dignity do we give to the fact that he did, in fact, send this, although to the wrong court? He did send it. He sent it to the wrong court. Well, it's not actually clear what he was intending to do. He did argue in his traverse in the district court that his intention was to send another Cormelos petition to the Superior Court because he didn't think he got a ruling on the first Cormelos petition. So he has made a different argument. It appears, looking at it, that his intention was to file it in the California Court of Appeal, because that's the way it is entitled. I have no idea why he argued differently in the traverse. And, of course, he was pro se at that time also. Yes. Yes. And I assume you're looking at page 4 or at least page 360 of the record, where in his wherefore passage at the end, Petitioner respectfully submits his petition for writ of quorum nobis to correct an error. So that has hardly anything to do with his pending appeal. Is that what you're saying? Because the last paragraph of his memorandum of points and authorities in support of the writ of quorum nobis says that he is submitting his petition to correct an error of fact. I was actually referring to the traverse he filed in the federal district court. Okay. I am still stuck on this November 29th docket, because that's what's an issue here. Should this be taken into account for statutory tolling? Should it be taken into account for equitable tolling? And what's your answer? Well, statutory tolling is easy. It wasn't properly filed in either court, despite the fact that it does have that stamp on it saying filed in a superior court. The equitable tolling. Equitable tolling. I did argue in my brief that equitable tolling would have been ruled on. Colin Guthard has said it does apply in habeas proceedings. This case, he doesn't get equitable tolling, because this is an extraordinary circumstance beyond his control. This isn't the state prison system taking his legal proceeding and throwing it in the garbage. He put the wrong address. He wasn't diligent. He didn't file in the right court. It wasn't, therefore, properly filed, and he doesn't get the equitable tolling. Very well. Andy, thanks. I should know this. I assume it's in the record, but you can tell me. How different are the addresses between the superior court where he sent it and the court of appeal where he should have sent it? One is 210 Temple Street in L.A., and the other is 300 South Springs Street in L.A. Yeah, so. He did have the proper addresses if he had looked in the proof of service his counsel filed in the petition for review, had he had that there. But they are different addresses. Do you know what the practice is if something is sent to the superior court, and it's obvious to the clerk in the superior court that it should have been sent and was intended to be sent to the court of appeal? Does the clerk in the superior court just sit on it and not do anything anyway? I haven't personally seen a letter from the superior court to a petitioner saying this has been filed in the wrong court. It seems that would be a practice that might occur, but I don't personally. Or they just send it over to the court of appeal. But the short answer is you don't know. I don't know. I think the practice would be more of sending the letter back to the prisoner and having him file in the proper court. But in this case, nothing was done, either sending anything back to the prisoner or sending it over to the court of appeal. As far as the record shows. They just stamped the file and put it in the file and did nothing. That's as far as the record shows. Yeah. Anything further, counsel? Nothing further, Your Honor. Ms. Buchanan, you have some reserve time. Just very briefly. Actually, two weeks ago, I did send my excerpts of record, accidentally, that were supposed to be here, to Macalester Street in San Francisco, which is the court of appeal in San Francisco. And I did receive a call from the court clerk there saying, send your messenger over and have them pick this up and send it to the Ninth Circuit. So I don't know. That just may have been that particular clerk. But that did happen in my own personal case. Did you say you sent it to the California Court of Appeal instead of the Ninth Circuit? Yeah, right, because I hit my FedEx print button and I sent it to Macalester Street instead of to the Ninth Circuit. And in addition, Mr. Willman indicated that the court of appeals always treats Coram Nobis and Habeas Corpus the same. The court of appeals, when it did rule, it did rule separately on the Coram Nobis and the Habeas Corpus when it finally did rule. Thank you. On this November 29, 2004 filing, what do you – I mean, I see the caption of it. It's a petitioner's memorandum of appoints and authorities in support of the writ of Coram Nobis. Assuming it was filed directly in the court of appeal, what does this represent? I think it was his attempt at filing a petition for writ of Coram Nobis. He also attached – I mean, he also has – with it, he filed the petition for Habeas Corpus. He filed both of them. I don't know why he was thinking that he had grounds for Coram Nobis, but he did obviously think that there was some reason why he needed to file both of these in both courts, in all the courts. But I don't know. I think he – I don't – I'm sure he didn't have a form for Coram Nobis because it's not a usual writ. And so he just did this petition in the form of a memorandum of appoints and authorities. Well, if it's a writ of Coram Nobis, maybe he did file it in the right court, if that's what it is, rather than an appeal from the denial of his original petition. It may have – certainly if the court clerk had looked at it and said, you know, this looks like something he should have filed here, someone should have ruled on it. It should have gone to a judge to at least rule on it and say, have we dealt with this before? Because, as I said, the earlier one was – had the Coram Nobis attached at the back, so that it doesn't appear that the court actually saw it. I don't know what was going on there. But it was – I think it was placed in the file and nothing happened. All right. Thank you very much, counsel. Thank you. The case just argued will be submitted for decision. And we will hear argument next in United States v. Wilson.
judges: O'scannlain, Fletcher W. , Clifton